IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**TREVIS M. CHEATHAM,**            Case 3:14 CV 1636

    Plaintiff,                                         Judge James G. Carr

    v.                                              Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                             REPORT AND RECOMENDATION

### INTRODUCTION

Plaintiff Trevis Cheatham filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated July 24, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be reversed and remanded in part and affirmed in part.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB on July 25, 2011, alleging a disability onset date of June 6, 2011. (Tr. 106). Plaintiff applied for benefits due to six hip replacements and Perthes disease. (Tr. 46). His claim was denied initially (Tr. 46, 67) and upon reconsideration (Tr. 56). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 81). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on September 14, 2012, after which the ALJ found Plaintiff not disabled. (Tr. 26-45). The Appeals Council denied Plaintiff's

request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on July 24, 2014. (Doc. 1).

## FACTUAL BACKGROUND

*Personal Background and Testimony*

Plaintiff was born on January 14, 1967, and was 44 years old at the time of application for DIB. (Tr. 19, 32). Plaintiff completed the 12th grade and had previous employment as a group home aide. (Tr. 32-33). In his previous job, Plaintiff constantly lifted patients, up to 150 pounds, to and from wheelchairs, recliners, and toilets. (Tr. 147). He lived with his wife, who helped him get dressed in the morning, and two children. (Tr. 34, 167). Plaintiff testified he could not drive for long periods, but he did drive his daughter to school which is less than a mile away. (Tr. 34). He stated he was home in the afternoon when the kids return from school and that he was capable of cooking quick meals or warming up food for them. (Tr. 35).

Plaintiff had three hip replacements on each side as a result of Perthes disease[1]. (Tr. 31). He stated after his surgery, he had pain and stiffness but things had improved since he stopped working. (Tr. 31-32). He testified to numbness in his legs after sitting for ten to fifteen minutes and reported that to be comfortable he had to alternate frequently between sitting, standing, and lying down. (Tr. 34). Plaintiff stated he needed a cane only for long distances and used it on an as needed basis. (Tr. 35). He testified he did not think he could make it to the corner of his street without the cane and stated if he walked too far he would get tired and weak. (Tr. 36). He also reported dizziness from his medication and some minor falls at home. (Tr. 36). Plaintiff was

---

1. Perthes disease, also known as Legg-Calve-Perthes disease ("LCPD"), affects the hip, where the femur and pelvis meet in the ball-and-socket joint. LCPD occurs when blood supply is temporarily interrupted to the ball part of the hip joint. Without sufficient blood flow, the bone begins to die—so it breaks more easily and heals poorly. THE MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/legg-calve-perthes-disease/basics/definition/con-20035572 (last visited June 11, 2015).

prescribed Ultram, Flexeril, and Naproxen. (Tr. 36). Plaintiff also testified to back pain related to his uneven hips. (Tr. 37). He had gone to the emergency room for the pain but because of his poor insurance he could not get x-rays, but only therapy. (Tr. 37-38).

On a pain assessment report from August 2011, Plaintiff reported bilateral throbbing, sharp, piercing hip pain and bilateral hip stiffness. (Tr. 158). He stated that standing or sitting for too long, turning, certain surfaces, steps, and certain chairs both initiated and aggravated the hip pain, which sometimes spread to his back. (Tr. 158-59). He rated his pain a four, on a good day, and a nine, on a bad day, out of a ten point severity scale but he approximated he only had one good day a week. (Tr. 159). Similarly, he reported persistent stiffness and fatigue. (Tr. 159-60). He reported lying in bed, elevating his legs, and ice or heat helped to alleviate his symptoms. (Tr. 160).

*Relevant Medical Evidence*

Plaintiff was diagnosed with bilateral LCPD and osteoarthritis of the hips in 2002 and subsequently underwent a left total hip replacement with a revision in 2009. (Tr. 284, 294). In 2005, he underwent a right hip arthroplasty to relieve pain and had revisions done in 2009 and 2010. (Tr. 287, 294, 305). In 2007 and 2008, Plaintiff began receiving injections to treat trochanteric bursitis. (Tr. 290-93). Throughout this time, Plaintiff undertook physical therapy to assist in returning to work and activities of daily living. (Tr. 195-217, 282-97).

Moving forward to the relevant time frame after the alleged onset date, Plaintiff saw Keith Berend, M.D., on June 15, 2011 for evaluation of his left hip. (Tr. 398). Plaintiff stated he had been using two crutches and was having difficulty ambulating. (Tr. 398). The pain was constant and severe in the left groin and buttocks, so much so that Plaintiff was unable to ascend or descend stairs, put on a sock or shoe on the left side, and could only sit in comfort for one

3

hour. (Tr. 398). He also reported being able to walk only indoors and not being able to use public transportation. (Tr. 398). Dr. Berend observed a moderate limp and found no fixed deformity of the left hip but x-rays revealed bone deficits, breakage of screws, osteolysis, and migration of the acetablular component. (Tr. 399). Dr. Berend recommended revision of the left total hip arthroplasty and performed the surgery on July 5, 2011. (Tr. 399, 408).

On August 25, 2011, Plaintiff returned to Dr. Berend for a follow-up from his hip surgery. (Tr. 543). Plaintiff reported he was doing well and was interested in physical therapy. (Tr. 543). It is noted he was "toe touch weight bearing" and had "mild pain on the left in the groin and anterior thigh" that occurs intermittently. (Tr. 543). Dr. Berend stated Plaintiff could ascend and descend stairs in a non-reciprocal fashion, can sit comfortably in a chair for one hour but still could not put on his left sock or shoe and needed one cane for walking most of the time. (Tr. 544). Dr. Berend observed Plaintiff had a slight limp and could only walk indoors. (Tr. 544). In terms of medication, Dr. Berend noted a discussion about cutting down Plaintiff's Vicodin use and that he needed to find long-term pain management. (Tr. 544, 549).

Following a slip in January 2012, Plaintiff reported to the hospital he had right hip pain after twisting his hip. (Tr. 572). His x-rays showed no acute fracture or loosening of the right hip arthroplasty and he was discharged home with a hip strain. (Tr. 571, 574). The next month, Plaintiff went to Fastrack Urgent Care complaining of back pain. (Tr. 569). An x-ray of Plaintiff's lower spine revealed a bone spur on the anterior L3, severe narrowing at L5/S1, moderate narrowing at L2/L3, and mild narrowing at L3/L4. (Tr. 567).

In May 2012, Plaintiff was seen in the emergency room for right hip pain on walking although he denied the inability to ambulate or bear weight on the extremity. (Tr. 550). The

physical examination of Plaintiff's hip was normal except for complaints of pain during range of motion tests. (Tr. 551). Plaintiff was diagnosed with hip strain and discharged. (Tr. 552).

Neiman Odeh, D.O., has been Plaintiff's primary care physician since 2002.[2] (Tr. 218-225, 310-92). Throughout the first months of 2012 and again in February 2013, Plaintiff visited Dr. Odeh complaining of lower back and hip pain. (Tr. 562, 564, 586). He also reported Ultram was not helping his pain. (Tr. 562, 586).

*Opinion Evidence*

In November 2011, Dr. Odeh completed an RFC assessment for Plaintiff where he opined Plaintiff could not lift more than ten pounds, could stand or walk for less than two hours in a workday, and could sit for less than six hours in a workday. (Tr. 491-92). He also stated Plaintiff could never climb ramps, stairs, or ladders but could occasionally balance, kneel, crouch, and crawl. (Tr. 492). Dr. Odeh further limited Plaintiff's ability to reach in all directions and tolerate temperature extremes, vibrations, and hazards such as machinery and heights. (Tr. 493). He based these opinions on Plaintiff's multiple hip surgeries. (Tr. 491-93).

*State Agency Reviewers*

In September 2011, Steve McKee, M.D., opined Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for four hours, sit for about six hours, and was limited in his ability to push or pull with his lower extremities due to his hip replacements. (Tr. 50). He also opined Plaintiff could only occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, frequently stoop, occasionally kneel, crouch, or crawl, and must avoid all exposure to hazards such as machinery or heights. (Tr. 50-51). On

---

2. It is worth noting that while Plaintiff provided all of Dr. Odeh's records, they are almost entirely illegible.

5

reconsideration, Willa Caldwell, M.D., concurred with the previous RFC limitations of Dr. McKee. (Tr. 61-62).

*ALJ Decision*

In March 2013, the ALJ found Plaintiff had the severe impairments of Perthes disease with subsequent hip replacements, osteoarthritis, left hip trochanteric bursitis, and mild obesity; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 13-14). The ALJ then found Plaintiff had the RFC to perform a limited range of sedentary, unskilled work with no lifting or carrying greater than ten pounds, no walking for longer than one hour out of an eight-hour workday, no prolonged walking greater than fifteen minutes, and had to sit seven hours out of the eight-hour workday. Additionally, Plaintiff had to have the ability to stand and stretch for at least one minute at the end of each hour, but not greater than ten percent of the day. (Tr. 15).

Based on the VE testimony, the ALJ found Plaintiff could perform work as an Order Clerk, a Bench Worker, and an Assembler. (Tr. 20).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r*

*of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age,

7

education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) her analysis of treating physician Dr. Odeh's opinion was deficient; and (2) she erred in her credibility determination of Plaintiff's symptoms. (Doc. 16, at 1). Each argument will be addressed in turn.

### *Treating Physician Rule*

Plaintiff's treating physician argument is twofold; first, the ALJ failed to cite good reasons for not giving Dr. Odeh's opinion controlling weight and second, the ALJ failed to give good reasons for the "some weight" assigned to Dr. Odeh's opinion. (Doc. 16, at 12-15).

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902. An ongoing treatment relationship will exist when "medical evidence establishes that [claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice". § 404.1502.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).  These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

9

The ALJ gave Dr. Odeh's opinion some weight because it was not consistent with Dr. Berend's post-surgical records. (Tr. 18). While this implies that Dr. Odeh's opinion is not given controlling weight, it does not specifically refute either part of the controlling weight standard, objectivity or consistency. *See Wilson*, 378 F.3d at 546. In her analysis, it appears the ALJ did not question the medical basis for Dr. Odeh's opinion and therefore, had to find inconsistency to deny controlling weight. However, she only provided citation to one piece of evidence, Dr. Berend's follow-up examination on August 25, 2011, to prove that Dr. Odeh's opinion was inconsistent with the record evidence. (Tr. 18). Yet, the ALJ did not identify what specifically in Dr. Berend's opinion was inconsistent with Dr. Odeh's opinion. A single citation to unexplained record evidence is not sufficient to overcome the presumption of controlling weight. *See Rogers,* 486 F.3d at 243 (finding that not only must an ALJ identify the reasons for discounting an opinion, she must "explain[ ] precisely how those reasons affected the weight".).

Where as here, the ALJ failed to follow the administrative regulations requiring good reasons be given, the Court cannot find substantial evidence to support the ALJ's decision. *See Wilson*, 378 F.3d at 546; *Blakley v Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009). Since this finding necessitates remand, the Court will not review Plaintiff's second argument as to Dr. Odeh's opinion. The undersigned recommends remand to allow the ALJ to more fully explain the weight given to Dr. Odeh's opinion.

*Credibility*

Next, Plaintiff argues the ALJ's credibility determination failed to appropriately weigh the credibility factors. (Doc. 16, at 15-19). When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL

374186, *1. Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1.

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: (1) objective medical evidence of an underlying medical condition; or (2) objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs*, 801 F.2d 847, 853 (6th Cir. 1986).

> In evaluating credibility of Plaintiff's complaints an ALJ considers certain factors:
>
> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ summarized the medical evidence and specifically stated "[Plaintiff] has objectively-evidenced LCPD, osteoarthritis, and bursitis"; thus, establishing an underlying medical condition which could cause disabling pain. (Tr. 17); *Felisky*, 35 F.3d at 1038. She next went on to discuss the medical evidence which was inconsistent with a finding of disability, particularly that two months after his left hip surgery in 2011 he reported the same level of functioning he had when he was still working at the group home. (Tr. 17, 401, 543). After concluding the medical evidence did not support his claim of disabling pain, the ALJ continued analyzing Plaintiff's credibility as required by the regulations. *See Felisky*, 35 F.3d at 1039 (when the content of the medical record is insufficient to support a claim, the regulations require the ALJ to look at the § 404.1529(c)(2) factors).

The ALJ stated "in recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, I have also considered other evidence…pursuant to 20 C.F.R. § 404.1529". (Tr.

12

17). After listing the factors, the ALJ provided evidence of each of the factors. (Tr. 17-18). She cited activities of daily living such as cooking and driving his daughter to school, reports of only mild, intermittent pain following the 2011 surgery, his ability to walk with one cane and sit comfortably for one hour, his lack of further treatment such as physical therapy or pain management services, and his medication side effects; all of which are relevant to assessing Plaintiff's credibility. (17-18, 34-35, 543). It is clear from the opinion that the ALJ engaged in a proper credibility assessment.

The Court is limited to determining whether the ALJ applied the appropriate standard to her credibility assessment. *Cruse*, 502 F.3d at 542. It is certainly true that Plaintiff can construe these facts in a different light; however that does not alter the reasonableness of the ALJ's conclusions that Plaintiff's activities of daily living, treatment efforts, and medical evidence do not support his credibility. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). From a review of the opinion and the record, the ALJ had substantial evidence to support her conclusion that Plaintiff was not wholly credible.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned recommends the Commissioner's decision be reversed and remanded in part and affirmed in part.

      s/James R. Knepp II
      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).